**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

MICHAEL KOLPACK,                          :
                           Plaintiff,        :
                                            :
                                            : Civil Action No. 3:13-CV-2257-FLW
                      v.                  :
                                            :             **OPINION**
CAROLYN W. COLVIN,                        :
Acting Commissioner of Social Security,   :
                                            :
                           Defendant.         :
_____:

**WOLFSON**, **United States District Judge**:

     Michael Kolpack ("Plaintiff") appeals from the decision of Carolyn W. Colvin, the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability benefits under the Social Security Act ("Act"). Plaintiff claims that the Commissioner erred in denying Plaintiff's claim for disability benefits because Plaintiff's disease, Central Nervous System ("CNS") Vasculitis, while diagnosed only after his December 2007 stroke, was present and causing symptoms in April 2007, two months before the expiration of his disability insurance coverage on June 30, 2007. After a thorough review of the Administrative Record ("A.R."), this Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence, and, accordingly, affirms the Commissioner's decision to deny Plaintiff's claim for disability benefits.

I.      PROCEDURAL HISTORY


Plaintiff filed an application for Disability Insurance Benefits on April 2, 2009, alleging disabilities due to "stroke, high blood pressure, high cholesterol, and diabetes." Together these "disabilities" are alleged to have prevented him from working as of June 30, 2007, his date last insured ("DLI"). His application was denied by the Regional Commissioner on May 12, 2009, A.R. 128, and denied on reconsideration, by the Social Security Administration, first on June 30, 2009, and again on August 26, 2009. A.R. 133, 137. A hearing was held before an Administrative Law Judge ("ALJ") on August 24, 2010.  On September 3, 2010, the ALJ issued an opinion denying Plaintiff's claim for Disability Insurance Benefits, finding that Plaintiff was not disabled on or before June 30, 2007. A.R. 96-104. Plaintiff timely requested review before the Appeals Council, which was denied on July 5, 2012. A.R. 17. Plaintiff now seeks review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).


II.     BACKGROUND


Prior to 2001, Plaintiff worked as an electronic technician, machine technician, and network administrator. A.R. 221. Since that time, Plaintiff has been unemployed. A.R. 221-222. Plaintiff's Social Security Disability Insurance Benefits expired seven years later, on June 30, 2007, at which time Plaintiff was 49 years old. Neither party disputes that June 30, 2007, was Plaintiff's DLI. Additionally, there is no evidence that Plaintiff held a full time position after his DLI.

Before Plaintiff's DLI, Plaintiff sought treatment for a series of conditions that he does not claim are related to CNS Vasculitis, including, chest pain, tennis elbow, and sinus infections. Plaintiff first sought treatment for dizziness, one of the symptoms he now attributes to CNS Vasculitis, in November 2007, five months after his DLI. A.R. 101-02. Plaintiff then suffered a stroke in December 2007 for which he sought and received medical care. Plaintiff's condition of disability in the period after December 2007 is not in dispute.

Plaintiff, on appeal, contends that he suffered severe symptoms of CNS Vasculitis beginning in April 2007, which worsened after he suffered a stroke in December of that year. Pl.'s Br. 2. Specifically, he argues that, before his DLI, he experienced severe impairments from CNS Vasculitis, including confusion, dizziness, headaches, and difficulty walking. Pl.'s Br. 2. Plaintiff claims that these mental and physical limitations, caused by the as yet undiagnosed CNS Vasculitis, prevented him from working on and after June 30, 2007, and therefore asserts that he now should be entitled to disability benefits. Pl.'s Br. 1. The Decision of the ALJ, now on appeal, is that Plaintiff was not disabled in the period on or before his DLI, because there was no objective medical evidence of severe impairment during that time.

III.    REVIEW OF MEDICAL EVIDENCE

A.    Prior to Insurance Expiration (before June 30, 2007)

The period of time prior to the expiration of Plaintiff's disability insurance—the period before and including June 30, 2007—is the focus of our inquiry because records from this period are most relevant to the question of Plaintiff's eligibility for insurance benefits. Stated simply, a claimant must become disabled *while insured* in order to receive disability benefits.  420 U.S.C. §

423(a)(1)(A). While acknowledging this fact, Plaintiff claims that the nature of his disease made formal diagnosis before his DLI unlikely, but, nevertheless, that his experience of symptoms related to CNS Vasculitis in the months leading up to this DLI were of sufficient severity to prevent him from working beginning on June 30, 2007.

The earliest medical evidence in the record originates from 2001. In that year Plaintiff had the first of a series of documented appointments with Dr. Beede, an internist of Medical Associates of Lawrenceville. Dr. Beede diagnosed Plaintiff with numbness in the fingers of the left hand, observing that "the left median nerve motor terminal [was] prolonged." A.R. 380, 526-27. Dr. Beede prescribed a course of treatment, which was apparently successful, because in 2003, Dr. Beede recorded that Plaintiff felt better after a course of physical therapy. A.R. 378.

In 2005, Plaintiff again sought treatment from Dr. Beede, this time for twitching in the muscles on the left side of his chest. A.R. 418. Dr. Beede reported that the twitching was not the result of effort angina and referred Plaintiff to Dr. Genin, of Hamilton Cardiology Associates. A.R. 418. A stress test and echocardiogram, conducted by Dr. Genin, produced unremarkable results that indicated low risk of coronary disease. A.R. 467-85, 518-19.

In March 2007, Dr. Beede treated Plaintiff for lateral epicondylitis—tennis elbow—with physical therapy. A.R. 416, 439, 515. In May 2007, Dr. Beede received a phone request from Plaintiff for antibiotics to treat a sinus infection. A.R. 438. Plaintiff was prescribed Biaxin and instructed to take a decongestant. A.R. 438.  This concludes the medical evidence in the record in the period leading up to Plaintiff's DLI. As explained above, because the present issue on appeal is whether Plaintiff was disabled on or before June 30, 2007, this medical evidence will be the focus of our analysis.

4

B.      After Insurance Expiration (after June 30, 2007)

Although not central to the discussion of whether Plaintiff was disabled on or before his DLI, Plaintiff uses medical records from the period after his insurance had expired to assert the novel argument that he had symptoms of his stroke and/or CNS Vasculitis on or before his DLI, June 30, 2007. Plaintiff contends that the light-headedness and dizziness experienced from April/May 2007 to December 2007 was indicative of his later impairments. Accordingly, this Court will consider the objective medical evidence from July 1, 2007, until the present.

On November 7, 2007, Plaintiff saw Dr. Beede for light-headedness, which Plaintiff believed could be connected to a head trauma he had experienced the month before when he closed his head in the door of his truck. A.R. 415. When making the appointment to see Dr. Beede, Plaintiff complained that he had been experiencing dizziness for "a couple of weeks." A.R. 437. By Plaintiff's estimate this places the onset of his dizziness in early to mid October 2007, at the earliest.  When Dr. Beede treated Plaintiff for the light-headedness and dizziness, in November, Dr. Beede observed an absence of factors related to neurological disease, and concluded that Plaintiff was experiencing nonspecific light-headedness. A.R. 415. In response to Plaintiff's concerns that the light-headedness was the result of a heart problem, Dr. Beede referred Plaintiff to Dr. Genin, a cardiologist, and instructed Plaintiff to watch for any worsening neurological symptoms. A.R. 415.

Plaintiff called Dr. Beede's office on December 1, 2007, and left a message for Dr. Beede in which he complained of flu like symptoms, which he described as extreme tiredness, not dizziness, but a change in his personality—he was too calm. A.R. 436. Plaintiff told the doctors that he had been in bed since Monday, November 26, 2007, and that all he wanted to do was sleep. *Id*. In this phone message from Plaintiff to Dr. Beede, Plaintiff explained that he had been dizzy

5

and light-headed on and off for three weeks prior, referencing his November 7, 2007 visit. *Id.* There is a note written on Plaintiff's December 1 phone message to Dr. Beede that indicates his blood pressure was within normal range, that he had no fever, nor upper respiratory infection symptoms, and that his blood work was fine. A.R. 436. In addition, the phone message from Plaintiff to Dr. Beede at his office reads, "to ER," it is unclear whether this was added at the time or later and what treatment was prescribed for Plaintiff. A.R. 436.

On December 5, 2007, Dr. Genin, again on Dr. Beede's referral, evaluated Plaintiff. A.R. 489. Dr. Genin ruled out a heart problem with an EKG test, and considered possible hearing complications as the cause of Plaintiff's dizziness. A.R. 489. Dr. Genin recommended Plaintiff discuss with Dr. Beede the possibility of visiting an audiologist, but this was never done because of Plaintiff's subsequent stroke, which occurred soon after this visit. A.R. 489.

On December 20, 2007, Plaintiff was admitted to Capital Health Systems, in Mercer, for possible stroke. A.R. 504. According to Capital Health System's records, Dr. Beede recorded that Plaintiff presented with "malaise and lack of energy," which progressed to confusion and motor skill issues. A.R. 504. Plaintiff was diagnosed with a probable stroke by his treating neurologist at Capital Health System Mercer, Dr. Zhang, who recommended an MRI, physical and occupational therapy, and an aspirin regime. A.R. 507-08. These recommendations were followed, and thereafter, Plaintiff received extensive medical care and testing. A.R. 493-514.

In January 2008, Plaintiff was evaluated for speech and language skills following his December 2007 stroke. A.R. 297-300. His receptive language and speech and articulation was reported to be "within functional limits," his expressive language had "moderate fluent aphasia," and his reading and writing skills were diminished. A.R. 297. Plaintiff exhibited "mild right-sided facial weakness/drop." A.R. 298. He had difficulty with running speech, as well as with convergent

and divergent thinking and problem solving.  A.R. 298. Speech-language and cognitive therapy was recommended. A.R 298.

In two February 2008 follow ups, Dr. Beede reported that Plaintiff's language skills showed improvement in speech, but that he continued to have difficulty with written language and to experience headaches. A.R. 414-13. Dr. Beede recommended that Plaintiff use an at home exercise apparatus and did not believe the headaches were caused by his medication. A.R. 413. By May 2008, Plaintiff told Dr. Beede that he felt well enough to participate in the flea market, a hobby undertaken by Plaintiff before his stroke and subsequent complications. A.R. 410.

In March and April of 2008, the Plaintiff experienced headaches, minor motor skill problems, and tiredness. A.R. 423, 426-27. Plaintiff was then seen by Dr. Farzad, whose impression was that Plaintiff had high frequency hearing loss and secondary tinnitus. A.R. 490.  In May 2008, Plaintiff saw a neuropsychologist, Dr. Mangel, of Saint Lawrence Rehabilitation Center, who reported "residual cognitive and behavioral sequelae" from Plaintiff's stroke, and suggested that Plaintiff continue occupational, speech, and rehabilitation therapies. A.R. 307. Three months later, in August 2008, Dr. Beede noted that Plaintiff's speech was more fluent and that he continued to do things for himself. A.R. 411.

On February 7, 2009, Plaintiff returned to Capital Health System Mercer because of dizziness, he received a CAT scan at the time which revealed "no acute findings." A.R. 347. Plaintiff was treated with antibiotics for an ear infection, but was instructed to return for additional testing. A.R. 351. He subsequently received a MRI, which revealed "some questionable enhancing lesion of [the] thalamus" and  "blockage of the middle cerebral artery, as well as the internal carotid artery." A.R. 351.  The MRI showed some "speckled enhancement of the right thalamus . . . . [which] may be related to . . . vasculitis." A.R. 451. Follow-up imaging in March and April of

2009 confirmed that Plaintiff had Central Nervous System ("CNS") Vasculitis of the brain. He subsequently sought treatment for CNS Vasculitis and continued seeing doctors for the symptoms resulting from his 2007 stroke. A.R. 555-57.


IV.    REVIEW OF THE TESTIMONIAL RECORD


At his hearing, Plaintiff testified that the "black spot in his brain"—presumably the result of his stroke or CNS Vasculitis—causes two of the toes of his right foot to twitch, limiting his ability to stand and walk for long periods of time. A.R. 111-13. He also reported involuntary movement in his right arm, which "pulls and jerks around." A.R. 111-13. Plaintiff testified that together these impairments limit his ability to remain asleep, causing chronic tiredness. A.R. 113-15. He also testified to limited memory, problems with balance, and difficulty reading, A.R. 117-18. He indicated that he had had two stints surgically placed in his brain to improve blood flow, and potentially faced a third surgery to implant a new vein in his brain. A.R. 118.

At Plaintiff's hearing, his attorney asked him what problems he experienced between May 2007 and when he had his stroke in December 2007. A.R. 119. Plaintiff testified that he experienced faintness and dizziness, while at a flea market he frequented. A.R. 119. Plaintiff further testified that he "went for like three or four months with that problem" before he "got a heart monitor," because he assumed these symptoms were related to a heart problem he believed himself to have.[1] A.R. 119. According to Plaintiff's testimony, three or four days after he had his

---

[1] After the sudden death of a friend in 2005, Plaintiff was concerned that he too had a heart condition. After seeing a cardiologist, who tested him for various problems, he was given a clean bill of health. However, it is apparent from his testimony that his concerns of a heart problem still remained – despite the absence of objective medical evidence of such an ailment.

"heart monitored,"[2] he had his December 2007 stroke. By Plaintiff's own estimate, therefore, the first sign of his light-headedness and dizziness occurred, at the earliest, in August 2007. Thereafter, Plaintiff described his therapy and impairments after the stroke and diagnosis of CNS Vasculitis. A.R. 120. [3]

V.   STANDARD OF REVIEW

On review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g); *see Matthews v. Apel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. §405(g); *see Knepp v. Apel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioners findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential¸ *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

---

[2] It is unclear from the record to what "heart monitor" referred.

[3] Plaintiff's testimony presents slight inconsistencies with his self-reported documents and medical record. His original Complaint, Social Security forms, and Brief, all indicate minor discrepancies as to when his alleged symptoms began, ranging from April 2007 to June 30, 2007. Plaintiff's testimony describes August 2007 as the start of symptoms, but his Brief describes "dizziness, headaches, and confusion" as early as April 2007. Pl.'s Br. 1.  However, in his original Complaint, he discloses June 30, 2007, as the onset date of his disabling conditions. A.R. 217. His Disability Report confirms that June 30, 2007, was when he became unable to work. A.R. 221. However, the Appeal Disability Report cites the start date of his new illness, CNS Vasculitis, as December 16, 2007; the approximate day of his stroke. A.R. 244.

Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 3.Fd 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 f.2d 1178, 1182 (3d. Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

## VI.    STANDARD FOR ENTITLEMENT TO BENEFITS

To receive disability benefits, pursuant to the Social Security Act ("Act"), an applicant must be disabled, meaning, unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. Furthermore, an applicant is disabled only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

A claimant's eligibility for disability benefits is evaluated by the Social Security Administration using a five factor test. *See* 20 C.F.R. § 404.1520. First, the claimant must show he or she is not currently engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i); *see*

*Bowen v. Yuckert*, 428 U.S. 137, 146-47 n.5 (1987). Second, the ALJ evaluates the "medical severity of [the claimant's] impairments," which must either individually or in combination, meet the duration requirement. *Id.* §404.1520(a)(4)(ii). This impairment must "limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5.

Third, the ALJ determines whether the claimant's impairment meets or is equal to the impairments listed in 20 C.F.R Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1420(a)(4)(iii). If the claimant proves his or her impairments are equal to, or meet those on the Impairment List, the claimant is automatically entitled to benefits. *See Id.* § 404.1520(d); *see also Bowen*, 482 U.S. at 146-147 n.5. The ALJ determines if an impairment equates to the Impairment List by analyzing the closest listed impairment, and deciding whether the claimant's impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a).  An impairment, or combination of impairments, is equal to a listed impairment if there are medical findings equivalent in severity to all the criteria for the most similar impairment on the Impairment List. *Williams*, 970 F.2d at 1186.

Fourth, if claimant's impairment does not equate to the Impairment List, the ALJ evaluates whether he or she retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R §404.1520(e); *Bowen*, 482 U.S. at 141. Only if the claimant cannot perform his or her past relevant work is he or she disabled. 20 C.F.R. § 404.1520(a)(4)(iv). The burden of proof rests with the Plaintiff to show he or she cannot return to past relevant work. *Plummer*, 186 F.3d at 428. Finally, if step four is proven by the Plaintiff, the burden shifts to the Commissioner to prove that the claimant is capable "of "perform[ing] work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This assessment factors "residual functional

capacity and [the claimant's] age, education, and work experience to see if [he or she] can make an adjustment to other work." 20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

Here, the issue is whether Plaintiff was disabled on or before June 30, 2007. The facts are not disputed as to whether Plaintiff suffered a stroke in December 2007 and has now been diagnosed with CNS Vasculitis since 2009. The Court's only focus is whether the symptoms of any of Plaintiff's conditions began on or before his DLI, and, if so, whether those symptoms were so severe as to be disabling under step two of the §404.1520 evaluation process.

## VII.    THE ALJ'S FINDINGS

### A.    ALJ Decision

In his decision, the ALJ found that Plaintiff "failed to overcome the burden of proof establishing he had a severe impairment." The ALJ observed that Plaintiff satisfied the first step of the five-step sequential evaluation process, because both Plaintiff's testimony and the record indicated that he had not been engaged in substantially gainful activity since 2009. A.R. 100. The ALJ concluded, however, that Plaintiff was not disabled on or before his date last insured, and therefore was ineligible for Disability Insurance Benefits. The ALJ focused on the second step of the five-step sequential evaluation process, and held that Plaintiff was not severely impaired under the Social Security Act. A.R. 99. § 423(a)(1)(a). The ALJ reached this decision through careful analysis of the record. First, the ALJ concluded that Plaintiff's severe impairments were not present on or before his DLI, but rather began in December 2007. A.R. 101. Second, the ALJ held

that the impairments for which Plaintiff was treated on or before his DLI, and for which there is objective medical evidence, were not disabling under the Act. A.R. 101.

First, when examining the evidence, the ALJ found that all of Plaintiff's severe impairments date back to December 2007. A.R. 101. The ALJ observed, that while it was clear that Plaintiff suffered a stroke, the earliest symptoms indicating this condition occurred after June 30, 2007; and therefore were not disabling during the period of coverage for Social Security Disability Insurance Benefits. A.R. 102.  The ALJ observed that the date of Plaintiff's stoke was almost six months after June 30, 2007, Plaintiff's DLI. Furthermore, the ALJ found that the record contained no objective medical evidence substantiating Plaintiff's claim that he suffered a disabling condition on or before the DLI. A.R. 101.

Second, the ALJ found that Plaintiff's other impairments: chest pain, tennis elbow, and a sinus infection, while present on or before June 30, 2007, were not severe. A.R. 102. The ALJ concluded that these ailments amounted to no more than minimal functional limitations, meaning that they did not impair Plaintiff's ability to do basic work activities. A.R. 102. Because more than a "minimal effect on the ability to do basic work activities" is required by the Act to be eligible for disability benefits, Plaintiff's claim for disability benefits was denied. 61 FR 34468, 34468.


B.     Analysis of ALJ decision

The ALJ's decision to deny Plaintiff's claim for benefits is supported by substantial evidence in the record. The ALJ concluded that the record is "devoid" of any support for a severe impairment on or before the DLI. This Court agrees. First, the absence of any medical treatment for severe impairment on or before June 30, 2007, indicates that Plaintiff did not suffer from a severe disability. Second, the objective medical evidence on record indicates that the only minor

impairments which did exist when the Plaintiff's Disability Insurance Benefits expired do not support Plaintiff's claim that he experienced symptoms of his CNS Vasculitis on or before his DLI.

    1.   Absence of medical treatment

Plaintiff did not receive medical treatment for the severe impairments from CNS Vasculitis that he claims to have experienced on or before his DLI. This absence of treatment from the record allows for the inference that he was not disabled, because of his prior contact with his doctor for minor issues and his demonstrated capability to act when facing severe health problems. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003).

Prior to June 30, 2007, Plaintiff had been in contact with his doctor as recently as March and May of 2007, complaining of tennis elbow and a sinus infection respectively. A.R. 438-39. While Plaintiff claims that he was suffering neurological symptoms from April or May 2007, Pl.'s Br. 1, he made no mention of these conditions when he called to complain of these comparatively minor ailments. A.R 438. Logic demands that if Plaintiff were suffering disabling neurological systems, he would have notified his doctor if already in contact for a much less troubling illness like tennis elbow.

While the absence of medical attention is not dispositive of a lack of severe impairment as analyzed under the second test of the five-step sequential evaluation process, *see Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003), the Third Circuit has indicated that circumstances may allow for an inference to be drawn from non-treatment. *See id.* In *Newell*, the court observed that inability to pay for medical treatment can prevent the inference of non-impairment when there is a demonstrated record of financial difficulty and non-treatment leading up to the termination of insurance coverage. *See id*. The present circumstances are different. Plaintiff made regular contact

with his doctor for both major and minor medical issues, and presents no explanation for why he did not seek similar treatment for the severe impairment he claims existed on or before June 30, 2007.

This conclusion is further supported by the events surrounding Plaintiff's December 2007 stroke. When Plaintiff experienced abnormal tiredness, which he described as flu like symptoms, his wife brought him to the hospital. A.R. 119-120. According to Dr. Beede's hospital report, Plaintiff was admitted to the hospital two days after his tiredness and sleepiness began. A.R. 504.[4] A.R. 436.  A consultation record with the treating hospital noted that Plaintiff was previously healthy, that Plaintiff's wife found him clumsy, intense, and manipulative at home, and that when the exhaustion did not abate, his wife called a doctor and then took him to the hospital. A.R. 283-89, 504.

This process, from the appearance of symptoms to treatment, took no more than three days, according to Plaintiff's testimony. A.R. 119-120. The quick response of Plaintiff and his wife indicates that they were capable of seeking medical treatment when severe impairment made it necessary to do so. The demonstrated capability to act, coupled with the absence of treatment in the record for similarly severe conditions, creates a strong inference that Plaintiff did not experience a disabling medical condition prior to June 30, 2007, his DLI.

2.  Objective Medical Evidence and slight abnormalities

---

[4] However, Plaintiff's phone calls to the doctor may place the flu-like symptoms beginning as early as November 26, 2007, almost a month before he was first admitted to the hospital. See *supra*. A.R. 436. Even assuming this earlier date, however, Plaintiff still sought treatment after only a few weeks of symptoms. Were the Court to accept Plaintiff's narrative of disabling neurological impairments beginning on June 30, 2007, it would have to conclude that Plaintiff waited almost five months before consulting a physician about the allegedly severe symptoms, and even then, in the November visits to Dr. Beede, did not express that the symptoms were of disabling severity.

Secondly, the ALJ's decision is supported by substantial evidence because the objective medical evidence that *is present* in the record indicates that Plaintiff's disability occurred after the DLI, and the impairments present prior to June, 30, 2007, were not severe. Both Plaintiff's testimony and the medical record support the ALJ's conclusion.

    a.  Testimonial Record

At his hearing before the ALJ, Plaintiff was asked what symptoms he experienced from May 2007 to December 2007. A.R. 119. Plaintiff described light-headedness and dizziness while at the flea market from, at the earliest, four months before his stroke. A.R. 119. This timeline, provided by Plaintiff, indicates that his first symptoms of dizziness and light-headedness, which Plaintiff claims were disabling symptoms of his CNS Vasculitis, began in August 2007. This Court, like the ALJ, notes that this date is after Plaintiff's insurance had expired.

Furthermore, Plaintiff's medical record indicates that these symptoms began in November or October, when Plaintiff contacted his doctor to discuss his dizziness. A.R. 415, 437. Plaintiff thought this dizziness was related to a head trauma from the month before, as he had been light-headed off and on for the past "couple weeks". A.R. 119, 437. Plaintiff did not complain of any other instance or persistence of these neurological symptoms before the November phone call and doctor's visit. *Id*.

    b.  Medical Record

In addition, the conditions recorded by Dr. Beede on or before the DLI are chest pain, tennis elbow, and a sinus infection.  The ALJ held these conditions were not severe, but rather a series of "slight abnormalities" not entitled to Disability Benefits. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Furthermore, the record suggests these conditions had no more than a "minimal effect on [Plaintiff's] ability to do basic work activities." Plaintiff does not even

16

now claim in his Brief that these conditions were disabling impairments. *Id*, A.R. 221. Rather Plaintiff defines his disabling conditions as "stroke, high blood pressure, high cholesterol, diabetes" which resulted in "brain damage, tired, pain in head, musle [sic] pain, brain damage constaraton [sic], dizzy, headake [sic], sugar levels up and down," none of which have been connected by Plaintiff or his doctors to the objective medical evidence on or before the DLI. A.R. 221.

The ALJ in his decision did not contest, and this Court does not now contest that the Plaintiff suffered a stroke. A.R. 102. Nor does this Court doubt that Plaintiff now suffers from impairments that may limit his ability to work. What is relevant to the issue of Social Security Disability Insurance Benefits, however, is *when* these impairments began. The Plaintiff's severe impairments, if any, arose outside the period of his coverage. Despite Plaintiff's present conditions, the ALJ had substantial evidence to conclude that Plaintiff was not severely impaired on June 30, 2007, and this Court now affirms his decision.[5]

It is tragic that Plaintiff suffered a debilitating stroke, however, the Act requires impairments to be present during the period of insurance coverage to receive benefits. It was observed during Plaintiff's testimony at his hearing that he now suffers from severe impairments. While sympathetic to Plaintiff's plight, his injury is not the type the Social Security Disability Act was intended to remedy. Plaintiff was entitled to benefits from the time be stopped working in 2001 until his insurance expired in June 2007. Because substantial evidence exists to corroborate

---

[5] Because Plaintiff must present objective medical evidence supporting his claim of disability on or before June 30, 2007, and he has not, Plainitiff has failed to overcome his burden of proof. *See* Social Security Ruling 96-3p.  A claimant "must have a medically determinable "severe" physical or mental impairment or combination of impairments." 61 FR 34468, 34468. In order for an impairment to be severe, it must "limit[] [the claimants'] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5.

17

the ALJ's decision, that Plaintiff was not disabled during this time, Plaintiff's claim to disability benefits was properly denied.

## VIII.   ANALYSIS OF PLAINTIFF'S NOVEL ARGUMENT ON APPEAL

Although this Court has already found substantial evidence to support the ALJ's holding, Plaintiff has put forward a novel argument to relate symptoms of his CNS Vasculitis back before June 30, 2007.  Plaintiff's argument is threefold. First, Plaintiff contends that he should be granted disability benefits because CNS Vasculitis caused his December 2007 stroke. Pl.'s Br. 1.  Second, Plaintiff argues that his disease was not discovered until 2009 because it is so rare, but that he suffered from disabling conditions from his disease prior to April 2007. Pl.'s Br. 1. Finally, Plaintiff claims that he has been unable to work since April 2007 because of "weakness, loss of vision, and problems with . . . communication skills." Pl.'s Br. 1. The second and third arguments have largely been addressed above; however, because the first argument is somewhat novel, it will now be discussed. Stated simply, Plaintiff contends that the ALJ inappropriately denied his claim for disability benefits because his disease, CNS Vasculitis, was the underlying cause of his December 2007 stroke, and was present and causing symptoms in April 2007 before his insurance expired on June 30, 2007.

To qualify for Disability Insurance, Plaintiff must prove that he was disabled on or before his insurance expired. 420 U.S.C. § 423(a)(1)(A).  Proof of "[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [Plaintiff's] statement of symptoms (see § 404.1527)." 20 C.F.R. § 404.1508; *see also* Social Security Ruling 96-3p.  Additionally, a claimant may not prove entitlement to benefits by

presenting evidence from after his date last insured of an impairment which reached disabling severity only after the DLI, "even [if] the impairment itself may have existed before plaintiff's insured status expired." *Manzo v. Sullivan*, 784 F. Supp. 1152, 1156 (D.N.J. 1991); *Ortega v. Comm'r. of Soc. Sec.*,  232 Fed. App'x. 194, 197 (3d Cir. 2007) (in a case where the record indicated the plaintiff was not obese when his insurance expired, the ALJ correctly denied plaintiff's claim to benefits); *Massaro v. Comm'r of Soc. Sec.*, 84 Fed. App'x. 175, 179 (3d Cir. 2003) (in a case where plaintiff's injury progressed to a disabling degree only after her DLI, her claim for disability benefits was rightfully denied because there was no medical record supporting that she became disabled while still insured). Rather, Plaintiff must present adequate medical evidence of a severe disability prior to his DLI. Plaintiff's "burden of proof cannot be satisfied" by means of conclusory, self-serving testimony that she [or he] was disabled at the crucial time." *Id.* at 1157.

While the record indicates that Plaintiff now has CNS Vasculitis, that he had a stroke in December 2007, and that the CNS Vasculitis may explain the stroke, A.R. 493-514, 555-57; there is nothing in the record that supports Plaintiff's claim that these conditions were present and impaired his ability to work on or before June 30, 2007. Rather the medical record and testimony of Plaintiff place the neurological symptoms Plaintiff contends were disabling after his DLI, as explained *supra*. Additionally, although Dr. Beede, Plaintiff's treating physician, confirms in a letter on record, that Plaintiff suffered from some impairments in 2007, he does not confirm Plaintiff's assertion that these impairments were severe. A.R. 4.

CONCLUSION

For the reasons set forth above, I find that the ALJ's decision was supported by substantial evidence in the record. Therefore, the ALJ's decision to deny Disability Insurance Benefits to the Plaintiff is affirmed.

An appropriate Order shall follow.

Dated: _____7/1/2014_____                              _____/s/ Freda L. Wolfson___
                                                          The Honorable Freda L. Wolfson
                                                          United States District Judge